Good morning, your honors. I'm Louis Miller. I represent Rod Stewart and related parties. With me this morning is my partner, Carrie Garvis Wright. I want to make a comment before I turn right to the contracts and get down to it. My burden is to show that this contract is reasonably susceptible to more than one interpretation, and there are tribal issues of fact. I stand here today having looked at the contract myself. Magistrate judges looked at the contract. Opposing counsels looked at the contract. And the district court judges looked at the contract. And there are three different interpretations that the parties have come up with in writing. The magistrate judge and I see this as a force majeure situation. Mr. Stewart had he's a singer. He came down with he's diagnosed with thyroid cancer. He had to have throat surgery. Therefore, paragraph D-17, which is incorporated by reference into the amendment, explicitly applies. So two of us saw it that way. Opposing counsel, in moving for summary judgment, looked at D-18 in the contract and said that's the clause that applies to illness or being incapacitated and requires refund. Any cases that said that the force majeure clause is used for illnesses? It depends on the language of the clause. In this case, I think it's available, yes. No, no. I just asked whether you had any cases that apply the force majeure clause to illness. I'm just curious whether there are any. I guess you're saying you don't have one. I don't have one. Okay. I don't have one. I don't know of any that say it doesn't either, but I just wondered maybe. I have experience with force majeure clauses for what it's worth. I litigated a force majeure clause in a totally different context. It was based on a governmental antitrust decision. And in that case, I researched them extensively. And the courts all say it depends on the language of the clause and the intent of the parties. And they can be broad or they can be very narrow, and it just depends on what issue they were addressing. You would think that illness was not that startling an occurrence, that artists have become ill before. Well, in this particular case, nobody was contemplating he would get sick, obviously, but in this particular case, they drafted the clause very broadly. They said if any party's obligations are rendered impossible by, and then they go through the various flood, fire, riots, acts of God. The magistrate thought thyroid cancer was an act of God, by the way. She put that in her opinion. That's an interesting one. And then it goes on to say, or any other cause beyond such parties' reasonable control. I think arguably it's just got to be a reasonable interpretation. I think a very reasonable Or it would be more or less reasonable if sometime in the history of this country somebody had previously asserted that illness was covered by force majeure and a court had considered it one way or the other. And if there are no cases, unless your opposing counsel has them, then we're left with just the ordinary reading of the language. I have to be honest. I didn't look for those cases. I saw this as simply I'm opposing summary judgment. Is it reasonable? Is it a reasonable interpretation for me to say D-17 applies? I think it is. It certainly is in the absence of cases that say the opposite. That's why we sometimes look for cases. If you had a whole line of cases that said force majeure is intended for certain external events, not internal, then it wouldn't be a reasonable argument. If there are cases that said force majeure ordinarily covers illness, then it would be an extremely reasonable argument. If there are no cases, it's somewhere in between those two. Okay. Fair enough. The other guys say that Paragraph 18 applies. That's where you were. Right. They say Paragraph 18 applies. The problem with that argument is that Paragraph 18 by its terms only applies to the first concert, the Millennium concert, which was performed. Well, it doesn't say that. What it says is it refers to Paragraph A-2, which is the one with the – doesn't it? Doesn't 18 refer to Paragraph A-2? A-2 refers – yeah, it refers to A-2. And A-2 is the one with the $3 million price for the Millennium concert. It has to apply to the Millennium concert because there was no second concert agreed to until about six days later, and six days after the Millennium concert occurred. That's when the amendment got signed. Well, you know, all those provisions in that contract originally applied only to the Millennium contract, even Paragraph 17. I mean, so the question is whether – one of the questions, anyway, is whether those provisions conflict or are consistent with the new amendment, since I think because the new contract intended to incorporate the not inconsistent provisions of the previous contract. Have I got that wrong? No, Your Honor, you've got that exactly right. All right. I mean, the incorporation clause is even broader than the not inconsistent. It just says, Except as specifically amended hereby, the terms of the existing agreement are hereby ratified and affirmed and shall apply. So it's very clear that they intended to incorporate the force majeure clause. Then the – You wanted to get to the third view, which was the district court's view. The third view, the district court's judge – the district court's view, which, quite frankly, threw me for a loop, is based solely on the amendment, the January 6th amendment, Paragraph 2, which says, In the event that the 2000 – the second concert is not performed on December 30th, 2000, subject to an extension as provided below, all the funds paid or held in interest are to be returned. I think the district court's interpretation, I think, is wrong, because it totally disregards that basically the district court judge said that the only way that the concert – the only way that a refund can occur is if he – is if Stewart fails to get the extension as provided in the amendment. Otherwise, he's got to return the money. In other words, there's no other basis for rescheduling. So he's reading below as being below in this document, but not the past document. Is that – Exactly. But he doesn't go below enough. He doesn't go – he only goes to Paragraph 4 below. He doesn't go to Paragraph 5 below, which is the reference back to the first contract and to the force majeure. And that's – that's my position, that it's totally reasonable. I'm certainly going to do some additional research if I'm fortunate enough to get back to the district court. And – but it's – it is a reasonable interpretation in the language of D-17 to say it applies in the case of thyroid cancer for a singer who had to have throat surgery. Now, it's interesting, because I was looking through the record. Even Rio, in one of Mr. Stewart's performance impossible. They set it point blank. It's at page 354 of the record. Of course, the Rio does not want, expect, nor will it accept performance from Mr. Stewart when he is not at 100 percent physically. So I think the record supports the circumstances, the factual circumstances of this case falling under D-17. And that, in a nutshell, is our position. I mean, I could go on and – I don't think it is either. I think that's what it all comes down to. And I think it has to go back to the district court. And we put in extrinsic evidence. The extrinsic evidence is relevant to interpretation of D-17. Mr. Tyerman, the lawyer, Mr. Stiefel, the manager, extensive extrinsic evidence. And I think the trier of fact has to hear it. That's our position. Thank you. Thank you. I would like to reserve, if it's appropriate. Yes. We'll give you time to rebut. May it please the Court. I'm Christina Pickering. I represent Rio Properties. We are here asking the Court to affirm the summary judgment that Judge Hicks granted in this case. The facts are pretty straightforward. My client paid $2 million, the full contract price. And in return, Mr. Stewart promised to appear and to perform a concert on December 30, 2000. He did not. On November 9, 2000, his representative wrote my client a letter and said not that he has thyroid cancer, not that it's impossible for him to appear, but rather that Mr. Stewart has undergone a medical procedure and Could it have been any different if he said he has thyroid cancer? I think it might have been. He could have had a different argument, but he's trying to invoke the force majeure clause here, and there is no evidence at all of an illness that would make it impossible for him to appear, assuming for the sake of argument that illness indeed constitutes force majeure, which on this contract I don't agree with. Do you have any cases on whether illness constitutes force majeure in general or under any particular type of contract? The general Williston sort of law on that is that it depends on the language of the contract clause itself, as Mr. Miller stated, and that it must rise to the level of impossibility. This is a pretty broad clause, isn't it? No, it is not that broad. It does not include illness, and the parties in the succeeding paragraph addressed illness specifically and wrote that in the event of illness, the payment comes back. Words in a contract are used the same way throughout the contract. in the succeeding more specific address is that indeed that clause, which does not say anything about a person getting sick, does not apply to illness. Well, that might be okay. I'm sorry. That might be okay as far as it goes, except that you do have the problem of the reference back to paragraph A-2. I'm not troubled with that. And I think Judge Hicks correctly identified that. And I want to say for a moment that why do you think that's not a problem? Two reasons. One, standard of review, and two, because of the way in which the contract was, the contract history and the wording of the contract. The clause with respect to that's governing here is paragraph 2 of the amendment, which says in unmistakable terms that if this concert doesn't go forward on December 30, 2000, subject to exception as stated below, the money comes back to Rio. Mind you, we weren't just making a deposit. We were paying the full contract price. Now, general California law, and we cite the California statute, 1490 says, if you and I make an agreement and you're going to do something on a specific date and you promise me that performance and you don't perform, you have to give me my performance back, in this case my $2 million that I prepaid. Mr. Stewart wants to say that he had a right to reschedule. If he had a right to reschedule, that had to be in that contract. So it's your position that no matter what happened, force majeure or not, an act of God that prohibited it, a 9-11 occurrence, no matter what, if he didn't perform on that day, except for the one event you gave him, that if he got a better deal, he didn't have to perform on that day. But if it was impossible, all planes were grounded, the President ordered everybody to stay where they were? Stay with 9-11. That works for me. I mean, I think a 9-11 would be within the language of the force majeure clause. So the force majeure clause does apply to this. It's not that he has to perform it on that day, no matter what. It is generally the law that he must, but the force majeure clause defines specific instances. So we're back to what the breadth of the force majeure clause. And you say it's not a broad clause, although it says, or any other cause beyond such parties' reasonable control, except in causes of which the S.A.L. or RIO had knowledge or the exercise of due diligence should have had knowledge. And the fact that God strikes you with cancer, as the magistrate said, or cancer itself strikes you, you say is not a cause beyond the party's reasonable control? Your Honor, with all due respect, the contract D-17 force majeure is followed by D-18. And we're coming back to the A-2. Two different arguments you're making. You just made the argument that the only exception was that, you know, this great important exception that if you got a better deal. And then you said that's the only one. And then you said, and that's why 17 doesn't apply. And then you say, oh, except that 17 applies and now 17 applies but doesn't apply because of 18. Well, either the amendment either refers to the whole rest of the contract, whatever it is, or the amendment doesn't refer to that whole giant contract which has all the operable provisions. I'm sorry. And we know it does. I'm trying to get to the answer. I'm answering two different questions simultaneously. Let me be clear and as forthright as I can be. Okay. The contract amendment says money comes back if it doesn't subject to exception is taken below. He wants to read below to go back into the main contract. I say fine. I agree with that. And you go back into the main contract. The problem he has when he goes back into the main contract and wants to rely strictly on the force majeure clause, which is D-17, is that the force majeure clause does not apply to what is in this record as his supposed force majeure defense to our motion for summary judgment. We do not have an affidavit from Rod Stewart. We do not have an affidavit from Rod Stewart's physicians. We do not have anybody with competent firsthand knowledge of what his condition was. You have the affidavit of Mr. Tyerman, and you have the affidavit of Mr. Stiefel. Tyerman is a lawyer. Stiefel is an agent. Neither one of them said that Rod Stewart had cancer and could not. It was impossible. Within the meaning of force majeure, it was impossible for him to perform. There is no evidence. It's not the basis of the district court's opinion. The district court made no findings that there was insufficient proof of a force majeure problem. The district court never got there. The district court says, I end with the language of the amendment. Isn't that what the district court did? And that's all they did. Because there was no evidence to take him there. The people who oppose a motion for summary judgment have a duty to put forward evidence sufficient to take the case to trial, not just a theoretical argument. They have a duty to put forth evidence. I don't recall the district court judge saying that either, that I'm not getting to 17 because there was no evidence. I mean, the whole briefing below and the magistrate's opinion is based on paragraphs 17 and 18, right? It's not as if this wasn't the big issue. You know, it's ‑‑ I thought you argued this case on the basis of paragraph 17 and 18. No. We argued the case on the basis of paragraph A2 of the amendment and A4 and A5 and D17 and D18, and that D18 specifically addresses illness, meaning that D17, which is the force majeure clause they want to bring themselves under, can't apply because there's another more specific clause. That argument I understand. I understand your argument that we should read 17 in light of 18. Yes. And that 18 is the illness clause, and therefore 17 doesn't apply to illness. That argument I can understand. Okay. And I thought that's what the case was about. Okay. But now what you're saying is he didn't have an illness. I am saying that it is not proven in this record. It is not. And, indeed, the affidavits appear to be quite carefully drawn. They say he was diagnosed with thyroid cancer. They give that. And it's a classic or situation. This Court's case in or. They want to argue based on evidence that doesn't legitimate or sponsor that argument for summary judgment purposes. I submit it's important and it's thematically consistent with our position, because what Mr. Stewart invoked was the I'm calling in sick, I want to reschedule. And that's his whole point of his opposition, was that he had discretion to call in sick and reschedule, and that that was the contractual precedent that was the norm in Mr. The problem he's got is that the law doesn't let you just keep money and reschedule when you have a date certain. Let me ask this, counsel. In the extrinsic evidence, is there not evidence that your side tried to reschedule? There is. And the fact of the matter is that extrinsic evidence, as the district court found, actually favors us in that we regarded the contract as binding, setting a date certain, that in order to be rescheduled, there would have to be an agreed-upon amendment to the contract. That's what Judge Hicks. So you could ask for rescheduling, but he couldn't. Is that right? We couldn't demand rescheduling. We could ask whether or not it could be renegotiated. I think there's a distinction there. Certainly he could have asked for it, and if we'd agreed to it, we wouldn't have been here. Both sides could ask whether or not something can be changed, but if they, by their conduct, are agreeing that it must be agreed to change, they're affirming that the contract doesn't permit it unilaterally. And that's what occurred here. And it's very significant that the way in which they presented their illness claim was similar to me calling in sick for school. I call in sick and I say in my discretion I'm sick, I can't be there. Under no circumstances is that impossibility, which is what force majeure addresses. Did you write him back? I was looking for the letters. They wrote and told you that he was sick and he'd have to change it. Did you write back and say you've got to give us proof he's sick? I'm sorry? I said when he wrote and said he was sick and he wanted to change the date, did you write back and say we need proof of your illness? That letter is not in the record, if indeed that was part of it. But this case was decided on summary judgment. Yes. He had to bring up proof. His discretionary I call in sick, I get to cancel, that he said in his negotiation history, was normally in a Rod Stewart contract, that he gets to keep the money and reschedule. He said that's his standard contractual precedent. He didn't put that in the contract. He didn't put it in. Yet when he wanted to reschedule, he acted as if that were in the contract. It's not in the contract. Now he wants to call, say that calling in is good enough and, oh, by the way, should be force majeure. There isn't a case in the country that says that I'm not feeling well today. He didn't say I'm not feeling well today. Is that what the letter said? I'll get you the exact words. He said no, I didn't bring the record. The letter that he wrote says this. As you have been advised, and I'm on ER 158 if that's of assistance, as you have been advised, Mr. Stewart earlier this year underwent a significant medical procedure from which he continues to recover, and it is the reasoned judgment of his medical and other advisors that it would be premature for Mr. Stewart to attempt a full concert appearance on December 30th date scheduled for the concert. Pursuant to the agreement between the parties, Mr. Stewart is excused from performing on the subject date. That's what they wrote. Okay, they wrote you that his doctors told him his medical condition prohibited him from giving a concert on the date contemplated. That's the discretionary D-18 illness provision. Under no case that I have found does that rise to the level of impossibility for force majeure, nor does a lawyer's letter, which is all you've got in this record is his lawyer's affidavit, and I can give you the actual language. There's only one paragraph in his lawyer's affidavit that they offer as proof of his supposed force majeure problem. Bear with me for just one moment. It's the Tyerman Declaration, and it's paragraph 31. This is the court's evidence of force majeure. Rod Stewart, who had been diagnosed with thyroid cancer, underwent surgery earlier in 2000. Although there had been hope for a full recovery by December 2000, it was the opinion of Rod Stewart and his physicians that he was not capable of performing a full concert, such as the second concert, the 1230-00 concert, which was scheduled to be 90 minutes in duration. That identical paragraph, and I'm reading from page 211 of the record, appears in the Stiefel or Stiefel, I'm not sure how to say his name, declaration. I don't have the page site. That is all you have in the way of proof that this man's medical condition made it impossible in the global force majeure sense. That's nonsense. The parties negotiated. Rio said, if I'm going to pay you guaranteed compensation, this isn't a down payment, it's guaranteed compensation under paragraph A-2 of the agreement. If I'm going to pay you the whole contract price up front. You're talking about paragraph A-2, and it sounds to me like you're talking about the Millennium concert. But it also gets carried forward for the next concert. We prepay. You want to talk about paragraph 2, talk about paragraph 2. You want to talk about paragraph A-2, they'd probably be very happy to have you talk about paragraph A-2. Okay. A-2 was the purchase price for the concert for $1,231.99. When the contract gets amended, and it's a bad semantic coincidence that amendment paragraph 2, and if I misspoke, I apologize, I'm not trying to mislead anyone here, that amendment paragraph 2 refers to the paragraph 1 of that concert again refers to guaranteed compensation, which is the language used in paragraph A-2. It's the whole contract price. When we renegotiated the second contract, or negotiated the second contract, I apologize, that got carried forward. The guaranteed compensation described in paragraph A-2 is the guaranteed compensation in paragraph 1 of the amendment. It's the same thing. It's guaranteed compensation, a term of art under the agreement. And I submit that if you look at paragraph D-18, their argument that the reference to A-2 somehow means only the Millennium concert and that otherwise he could call in sick and get out, they had to put that clause in, because the law says if you don't have that clause in, you're out of luck. California Civil Code 1490 counts you out. You agree to appear and sing on a date, you appear and sing on that date, unless your contract says you have an out and it gets rescheduled. Unless the force majeure clause applies. We're right back where we started. Perhaps we are, but they didn't. I mean, I don't think we have as many differences here. Okay. Well, it's a Celotex-Anderson issue. We filed a motion for summary judgment. It was their duty to come forward with evidence. Judge Hicks entered an order. This Court's decision in the U.S. Cellular case says on summary judgment, a judge's exclusion of evidence is reviewed for abuse of discretion, though the interpretation of the contract is reviewed de novo for purposes of is it reasonably susceptible, that U.S. Cellular case is on point here. Judge Hicks found they offered no evidence sufficient to defeat summary judgment. That's what he found. That's what his order says. And that is, in fact, what this record shows. There's persuasive and elegant argumentation by them, but argument is not a substitute for evidence. There is no evidence of his cancer, thyroid cancer, that the surgery showed that he had it, that he couldn't perform. There isn't any evidence of that. Counsel, has there been any effort to settle this case? We were in the settlement program. I'm sorry. Out the hallway during the break. Your Honor, I — For what it's worth, the Court asked. We talked about it. We've had talks on and off. Mr. Stewart has recovered. He's actually on tour now. He has a couple of really great-selling albums of pre-war songs. So I raised it with counsel, and I'm sure she'll discuss it with her client, and so will we. Well, the reason that I ask this, we have a very competent mediation service that is capable of settling miraculously. They've even settled a couple of death penalty cases. And I'm asking if you want us to refer you to mediation. Do I still have the floor here? I think you might sit down, Mr. Miller. We were in the settlement program, and we made effort to accommodate that. And, frankly, it broke down on Mr. Stewart's side, not on my client's side, if we're going to get into it. I never say no to a settlement proposal, but I do think that what he just did is illustrative of what we're getting in this record, which is there is so much unsubstantiated improper argument here that goes beyond what are the rules. We play according to the rules of civil procedure, and they say affidavits are evidence. They have to be firsthand knowledge. They have to be competent. It's fun to talk about force majeure. They didn't put up any evidence that would be sufficient to trigger it, arguably. And, furthermore, that force majeure clause says nothing about illness. D-18 addresses illness. And in the event of illness, call-in, sick, he has to give back the guaranteed compensation, which is what paragraph A-2 covers. Thank you. I don't quite understand the answer to the question of whether it might be useful for you to go to our mediation program. Do you say you have been in that, in our program? I have been in your program. We were in the court's mediation program, and we had a series of, and I may be mistaken on this, at least four conferences, three or four conferences, both private and joint, in which the mediator, who was extraordinarily competent, I thought, asked for each side to speak. All I want to know is whether you've been to work. We've been there, and we went through that, and it didn't go anywhere. We were reported back by the mediator, not in a joint session, that, in her judgment, it wasn't going to work. But thank you. And I'm out of time. Thank you very much. Oh, I had supplemental authority. It's the California Supreme Court case. I noted it on the... Just show it to your opponent and give it to the clerk. Okay. Do you need proof? No. Whatever you give the clerk will suffice. Thank you. Judge Reinhardt, I consulted with my partner, and she said in our research earlier we did find some law from New York based on the particular clause in the force majeure clause in that case that did apply force majeure to illness.  Thank you. I'm happy to provide that if the Court wants it. Well, if you'll just write the citation now and give it to the clerk and your opponent. We'll have to get it. I don't think we have it with us. That's the first point. The second point is that in Mr. Stiefel, the manager's declaration, he recites what happened. They were talking in September and October about rescheduling the concert. He was talking to Mr. Fishman, and they were – he thought they had reached agreement and Fishman was on his way to – from Las Vegas to Los Angeles to actually firm up the rescheduling, and then he canceled the meeting. That was September, October. After that all fell apart, Mr. Fishman – they thought they had it worked out. Mr. Fishman then went in a different direction. In his declaration, paragraph 24, he says he advised Mr. Fishman of Rod Stewart's mental – medical, pardon me, medical inability to perform and told him about the throat surgery and he's a singer and he's got to get his vocal cords tuned up and back in action, and he can't. Not by the – not by the date. So there is evidence. It wasn't litigated below, but there is evidence in the record, and it will be litigated. And there's never been any issue about the thyroid cancer or the throat surgery. It was acknowledged in the letter that I cited a little while ago. I think it was at page 354. It was acknowledged by Rio when they said, we know, and we don't want him to perform if he's not up to it. I mean, who wants Rod Stewart if he can't sing properly? Well, maybe who wants Rod Stewart anyway may have been their view. I don't know if I can agree with that, but – No, I didn't say it's my view. I said that may have been the hotel's view. Yeah, maybe we can convince her the contrary. Their internal memos suggest that they couldn't sell tickets. That was a problem around that time period. They couldn't – they were really worried about the millennium, and then I guess they became worried about it the following year, and they wanted to reschedule. We even offered to reschedule at the beginning of his tour in the spring of the following year, and we'd pay the production costs. Well, I don't think any of that matters. I don't think it's relevant. I mean, the question is whether, A, if he was – was he sufficiently ill to be force majeure, if force majeure covers this instead of the illness cost, and should you be able to show it with extrinsic evidence. But it doesn't really matter whether he sings well or not or whether they wanted him or not. I agree. I agree. Let me – the last comment I have is what was litigated below was whether D-17 applied or D-18 applied. That's exactly right. And then the district judge looked at the contract differently. But the reason I bring that up is in the argument – it's in the record in the transcript of the argument before the magistrate – Ms. Pickering's partner, Steve Morris, acknowledged that D-18 couldn't apply because the millennium concert had already been performed. So a clause that applies to a concert that has already occurred cannot have any applicability. I think that's binding. I think that's an estoppel and an admission against counsel to take a different position now. Thank you very much. Thank you both very much. That's the final case of the day, final case of the week. The Court will stand in recess. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: B. Fletcher, Reinhardt, Restani